### LAND TITLE BANK & TRUST CO. v. WARD.

### No. 19984.

District Court, E. D. of Pennsylvania.

Sept. 27, 1937.

Murdoch, Paxson, Kalish & Green and Harry A. Kalish, all of Philadelphia, Pa., for plaintiff.

Joseph E. Gold, of Philadelphia, Pa., for defendant.

MARIS, District Judge.

This is a suit to recover from the former owner delinquent real estate taxes paid by plaintiff. From the statement of claim the following facts appear:

On April 16, 1926, plaintiff's predecessor acquired by assignment a bond and mortgage secured on premises situate at the southwest corner of C Street and Allegheny avenue in Philadelphia. On De-

cember 10, 1931, the Northwestern National Bank & Trust Company of Philadelphia (hereinafter called the Bank) became the real and equitable owner of the mortgaged premises subject to the mortgage, and from that date until May 4, 1936, collected, received, and held all the rents of the property.

On June 25, 1934, the defendant was appointed by the Comptroller of the Currency receiver of the Bank. On May 4, 1936, pursuant to foreclosure proceedings instituted by the plaintiff upon the bond and mortgage above mentioned, the mortgaged premises were sold by the sheriff to the plaintiff for the sum of $75, no part of which sum was received back by the plaintiff as mortgagee. On July 27, 1936, the premises were conveyed to the plaintiff by sheriff's deed.

City and school taxes were assessed against the mortgaged premises by the taxing authorities for the years 1933, 1934, 1935, and 1936, but the Bank failed to pay them, and they remained unpaid at the time of the sheriff's sale and were then a lien upon the property. These unpaid city and school taxes amounted with interest and penalties at the time of the sheriff's sale to the following sums:

| | |
|---|---|
| 1933 city and school taxes | $2,227.15 |
| 1934 city and school taxes | 2,340.15 |
| 1935 city and school taxes | 2,286.34 |
| 1936 city and school taxes | 1,968.75 |

On May 29, 1936, these delinquent taxes, amounting in all to $8,822.39, were paid by the plaintiff. The present suit is brought by it against the defendant to recover the amount so paid.

The defendant has filed an affidavit of defense raising the question of law whether the plaintiff has stated a cause of action. His argument is that the Bank was not personally liable for the payment of the taxes assessed against the real estate which it owned, and consequently the defendant as receiver of the Bank cannot be held liable to the plaintiff under the facts which we have recited. He does not contest the proposition that under the law of Pennsylvania a mortgagee, who after foreclosure has been compelled to pay delinquent real estate taxes, is subrogated to the rights of the city to enforce the personal liability of the former owner to pay the taxes assessed during the period of his ownership. Nor does he deny that in Pennsylvania personal liability for taxes

is an incident to the ownership of land. This is settled by authority (Shaw v. Quinn, 12 Serg. & R. [Pa.] 299; Pennsylvania Co. Trustee v. Bergson, 307 Pa. 44, 159 A. 32) and has been established by statute (Act Pa. April 16, 1845, P.L. 495). He merely contends a national bank may not be made personally liable for the taxes assessed against its real estate and, therefore, an action cannot be brought against it or its receiver to recover such taxes, either by the city directly, or as in this case by a mortgagee which by payment of the taxes has been subrogated to the city's rights. He concedes that, if the Bank was personally liable for the taxes upon its real estate, a good cause of action has been stated by the plaintiff. This case thus raises the question whether the state has the power to impose upon a national bank personal liability for taxes levied on its real estate to the same extent that such liability is imposed upon other real estate owners.

■ It seems clear that the states and their political subdivisions have always had the power to tax the real property of a national bank in common with the other real property within the state. In the leading case of McCulloch v. State of Maryland, 4 Wheat. (17 U.S.) 316, at page 436, 4 L.Ed. 579, Chief Justice Marshall said: "This opinion does not deprive the states of any resources which they originally possessed. It does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, nor to a tax imposed on the interest which the citizens of Maryland may hold in this institution, in common with other property of the same description throughout the state."

This right has never been abridged by Congress, but on the contrary has always been protected and preserved. Thus in section 41 of the Act of June 3, 1864, 13 Stat. 112, which provided for the incorporation of national banks, is found the following proviso: "Provided, also, That nothing in this act shall exempt the real estate of associations from either state, county or municipal taxes to the same extent, according to its value, as other real estate is taxed."

This proviso has been retained in substantially the same form ever since and now appears as subdivision 3 of section 5219 of the Revised Statutes (12 U.S.C. § 548(3), 12 U.S.C.A. § 548(3), as follows: "Nothing herein shall be construed to exempt the real property of associations from taxation in any State or in any subdivision thereof, to the same extent, according to its value, as other real property is taxed."

It thus appears to have been the intention of Congress to leave to the states full power to tax the real estate of national banks in the same manner and to the same extent as other real estate is taxed. This was made clear by Mr. Justice Miller in People of New York ex rel. Williams v. Weaver, 100 U.S. 539 at pages 543, 544, 25 L.Ed. 705, in the following language: "But Congress, with due regard to the dignity of the States, and with a desire to interfere only so far as was necessary to protect the banks from anything beyond their equal share of the public burdens, said, you may tax the real estate of the banks as other real estate is taxed, and you may tax the shares of the bank as the personal property of the owner to the same extent you tax other moneyed capital invested in your State."

■ As we have seen, personal liability for taxes has always been an incident to the ownership of land in Pennsylvania. It follows that a national bank in Pennsylvania is personally liable for taxes assessed against its real estate in the same way as other real estate is taxed unless Congress by the statutes to which we have referred has withdrawn from the state the power to impose such personal liability. This the defendant strongly urges it has done, and he points to the statute which in effect provides that the real property of national banking associations shall be subject to state taxation if taxed "to the same extent according to its value, as other real property is taxed." He argues that the manner of collection of states taxes on a national bank's real estate is qualified by the statutory direction that it shall be "according to its value," or, in other words, that it shall be restricted to the property and its value and collectible only out of the property value.

We do not so interpret the statute, however. As we understand the clause "according to its value," it is not intended to limit the manner of collection of state taxation at all. That is only limited by the manner in which "other real property is taxed," by the state. The purpose of the clause "according to its value" was to limit the tax which a state might levy to an ad valorum tax levied upon the same basis on all real estate similarly situated in the

taxing district. In other words, Congress has declared that, while the states remain free to levy and collect taxes upon the real estate of national banks in the same manner as upon other real estate, such taxes shall be levied according to a definite percentage of the value of the real estate taxed, and that both the rate and basis of valuation applied to the real estate of a national bank shall be the same as those applied to other real estate within the taxing district similarly situated. The clause upon which defendant relies relates solely to the admeasurement of the tax and is not concerned with the manner of its collection.

■ It follows that the imposition upon a national bank of the personal liability for taxes which is incident to ownership of real estate in Pennsylvania is not prohibited by the act referred to and this personal liability accordingly attaches to a national bank when it acquires real estate in this state. Consequently the Bank involved in the present suit was personally liable for the taxes for the years 1933 and 1934 which accrued before the defendant receiver was appointed. The plaintiff has therefore stated a good cause of action in respect of the taxes paid for those two years.

■ With respect to the taxes for the years 1935 and 1936, the defendant argues that, since they accrued after the appointment of the defendant as receiver of the Bank, the plaintiff cannot maintain a claim for them against the insolvent bank. There is, however, no averment of insolvency of the Bank in the statement of claim, although it may perhaps be presumed that the defendant was appointed receiver for that reason. It is true that a creditor is only entitled to claim as a debt due him by an insolvent bank the amount due and owing at the time of the Bank's insolvency. Kennedy v. Boston-Continental Nat. Bank (C.C.A.) 84 F.(2d) 592. The plaintiff appears to have stated its claim for these two years to be a debt due by the Bank. The time of the Bank's insolvency is therefore a fact which must be developed at the trial. At least, as we have said, it does not clearly appear in the statement of claim and cannot be taken as admitted. It, therefore, cannot at this stage be said that the plaintiff has not stated a cause of action as to the taxes for these years.

■ In this connection it may be pointed out that, even if the Bank did become insolvent on June 25, 1934, the plaintiff upon amending its statement of claim would be entitled to claim the taxes paid for the years 1935 and 1936 as an administration expense of the receivership. Section 5238, Rev.St. (12 U.S.C. § 196, 12 U.S.C.A. § 196); Hammond v. Carthage Sulphite Pulp & Paper Co. (C.C.A.) 8 F.(2d) 35; MacGregor v. Johnson-Cowdin-Emmerich, Inc. (C.C.A.) 39 F.(2d) 574; Hardee v. American Security & Trust Co., 64 App. D.C. 259, 77 F.(2d) 382.

The questions of law raised by the affidavit of defense are accordingly decided against the defendant with leave to file a supplemental affidavit of defense to the averments of fact of the statement of claim within fifteen days.