No. 12908

IN THE SUPREME COURT OF THE STATE OF MONTANA

1975

---

MONTANA NATIONAL BANK OF ROUNDUP,

Plaintiffs and Respondents,

-vs-

THE STATE OF MONTANA, DEPARTMENT OF
REVENUE,

Defendants and Appellants.

---

Appeal from:  District Court of the First Judicial District,
Honorable Peter G. Meloy, Judge presiding.

Counsel of Record:

For Appellants:

R. Bruce McGinnis argued, Helena, Montana

For Respondents:

Towe, Neely and Ball, Billings, Montana
Neil D. Enright argued, Billings, Montana

---

Submitted:  June 18, 1975

Decided: AUG 7 1975

Filed:  AUG 7 1975

Thomas J. Kearney
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

This appeal is from a judgment entered in the district court, Lewis and Clark County.

Appellant is the State Department of Revenue (hereinafter referred to as the "Department"). Respondent is the Montana National Bank of Roundup (hereinafter referred to as the "Bank").

On March 13, 1973, the Bank filed its statement for tax assessment with the Musselshell County assessor. Two specific computations and one omission regarding that document are subjects of this appeal. The first contested computation created a $100,000 reserve to cover depreciation and possible losses within the Bank's bond account. The second resulted from an error in the printed instructions in the Statement for Assessment, which mistakenly allowed a deduction for "cash on hand". Rulings by the Montana State Tax Appeals Board and the district court allowed the Department to correct this mistake, and this particular issue is not submitted for appeal to this Court. The third item concerned a deduction for real estate owned by the Bank as of the date of assessment. The Bank mistakenly omitted the item on its statement to the tax authorities, and therefore was not allowed the deduction.

The Bank appealed its 1973 assessment of bank shares to the Musselshell County Tax Appeal Board and the Montana State Tax Appeal Board. Relief was denied at both levels. The district court, however, reversed the State Tax Appeal Board on the issue of the reserve for bond losses and the deduction for real estate. The Department appeals and presents three issues.

Before entering into discussion on the merits, we note the method employed by the Department to value the Bank's property for purposes of taxation. Article VIII, Section 3, 1972 Montana Constitution imposes upon the state a duty to "appraise, assess,

and equalize the valuation of all property which is to be taxed in the manner provided by law." Under section 84-708.1(3), R.C.M. 1947, the Department may exercise such authority and do all things necessary to secure a fair, just and equitable valuation of all taxable property. Taken together, these two provisions grant the Department a certain degree of discretion in determining what method of valuation will be used for tax purposes. The Department's method of valuation is best described as a formalistic or "book value" method. The undivided profits, current earnings and surplus are added to the intrastate capital of the bank. From that sum is deducted the bank's liabilities and other property assessed and taxed to the bank. The resulting figure is the book value of bank shares upon which the property tax assessment is made.

The Department first contends the Bank's appeal to the district court was moot. Its contention is grounded on the fact the Bank paid the first installment of its taxes as billed by the Musselshell County assessor fifteen days prior to the time the petition for judicial review was filed. This Court has held to the general effect that when a judgment has been paid it has passed beyond review; the satisfaction is the end of the proceeding. In re Black's Estate, 32 Mont. 51, 79 P. 554; Peck v. Bersanti, 101 Mont. 6, 52 P.2d 168; Anno. 169 ALR 985, 988.

The Department in support of its argument of mootness relies on Blair v. Potter, 132 Mont. 176, 315 P.2d 177, and Gallatin Trust & Savings Bank v. Henke, 154 Mont. 170, 461 P.2d 448. These cases are clearly distinguishable, particularly in view of the fact the legislature amended section 84-709.1, R.C.M. 1947, which allows direct judicial review of the State Tax Appeals Board's decision by the district court. In effect there has been provided by statute an alternative method to paying taxes under protest. This is exactly what petitioner did and Blair and Gallatin Trust are not controlling. Further, we find this rule to be inappropriate in the context of the instant case.

It is equally well recognized that payment of a money judgment by the judgment debtor does not, by itself, render the cause moot for purposes of appeal. State ex rel. Hagerty v. Rafn, 130 Mont. 554, 304 P.2d 918, and cases cited therein. A defeated party's compliance with the judgment renders his appeal moot only where the compliance makes the granting of effective relief by the appellate court impossible. State ex rel. Begeman v. Napton, 10 Mont. 369, 25 P. 1045; Anno. 39 ALR2d 153, 179. Such is not the case here. The issues here are not moot because this Court's decision regarding them will strongly affect tax assessments by the Department in future years. We recognize and approve of the rule stated in Massell v. Daley, 404 Ill.479, 89 N.E.2d 361,364:

> "The question has not become moot merely by the payment of the amounts ordered by the judgments, because the decrees purported to perpetually restrain the State officials from collecting taxes * * * from these plaintiffs, therefore, affecting future tax collections."

The Department next urges the allowance by the district court of a $100,000 reserve to cover the possible depreciation of its bond account was error. The Court ruled on this precise issue in Miners National Bank of Butte v. County of Silver Bow, 116 Mont. 31, 148 P.2d 538. Thus our decision in the instant case must depend upon an interpretation of the holding in Miners.

Section 84-307, R.C.M. 1947, does not specifically allow for a deduction on bond loss reserves. It is clear that Miners rejected the claimed deduction for bond losses. Under the interpretation adopted by the Bank and the district court, the Miners rule disallows bond reserves if based on conjecture or speculation, but allows such reserves when based on a "well defined evaluation" of the entire account to which the reserve applies. The Bank urges that the required well defined basis exists in this case, and refers us to an evaluation of the entire bond account made by the assistant vice president and bond expert of the First

- 4 -

Nation. . . . . t. Paul, Minnesota. The evaluation shows that, within : : :levant time period, a net depreciation in market value of the total bond account existed in the amount claimed. The Bank attempts to further bolster its argument by pointing out that reserves for bad debts are commonly allowed, although not specifically authorized under section 84-307. It is again suggested that these reserves are allowed because they are based on factors nonspeculative in nature.

We hold that the Bank's interpretation is an inaccurate appraisal of the law as set out in Miners, and that the district court erred in adopting it. The propriety of the deduction for a reserve account for possible bond loss does not rest solely on the sufficiency or insufficiency of the supporting data upon which it is based. Such deductions are disallowed by the general principle that a liability does not accrue as long as it remains contingent. 2 Mertens, Law of Federal Income Taxation, Section 12.67, p. 274. This Court in Miners reaffirmed this important concept:

> "A bank may not thus withhold from assessment a part of its undivided profits by setting same up as a reserve to make good possible or anticipated losses on its bonds and stocks which losses may never occur." 116 Mont. 31,43.

There is nothing in the record here to show that the Bank has suffered an actual loss in its bond account, nor is there a showing that the Bank actively trades or sells its bonds. Therefore, the Bank acted improperly by creating a reserve for possible bond losses and by segregating this amount from its undivided profits.

The determination of the Department's final issue necessitates an interpretation of section 84-307, R.C.M. 1947, which provides:

> "The shares of all state banking corporations engaged in the banking business in Montana shall be valued and assessed for the purpose of taxation at the full cash value thereof, less the book value of the real estate, moneyed capital and other property of any such bank assessed and taxed as the property of said bank." (Emphasis added).

- 5 -

Based on the following facts the district court allowed the Bank a deduction for the real estated owned but by mistake omitted from the Bank's statement of assessment:

1. As of the first Monday in March 1973, the Bank was the owner of and liable for the taxes on certain real estate valued at $150,000.

2. This ownership was filed and on record in the courthouse at Musselshell County.

3. The Musselshell County assessor knew or should have known that the property was purchased by the taxpayer through a sheriff's sale.

4. The Bank mistakenly failed to place this property on its statement for assessment.

Clearly the Bank was the owner of the property on the first Monday in March and is liable for the taxes on the property. Under section 84-307 it is entitled to deduct the property from the value of its shares for the purpose of determining the tax on such shares. The trial court found

> "* * * since the allowance of a deduction for cash on hand was due to a mistake by the Department this Court finds that the Department is to be allowed to correct that mistake at this time and therefore disallows petitioner's claim for a deduction for cash on hand."

The same wisdom and common sense should apply to correct this honest mistake by the Bank. The trial court so found and we find no error in its finding.

Judgment is affirmed as to mootness, and for allowing deduction of the $150,000 real property mistakenly left off the statement of assessment. It is reversed as to authorizing a bond reserve account. The cause is remanded to the trial court.

_____
Justice.

We Concur:

_____
Chief Justice

_____

_____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - -
Justices.

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

Mr. Justice Frank I. Haswell, specially concurring:

I concur in the result, but disagree with the discussion on mootness.

_____
Justice