In the Matter of the Proceedings to Enforce Payment of the Tax on Mineral Interests Assessed Pursuant to Minn. Stat. § 273.13, Subdivision 2a, and Remaining Delinquent on the First Monday in January, 1977, 1978, and 1979, for the County of St. Louis, State of Minnesota.

COUNTY OF ST. LOUIS, Respondent,

and

Minnesota Chippewa Tribe, Respondent,
C3–82–630, C4–82–846

v.

THE FEDERAL LAND BANK OF ST. PAUL, Relator (C3–82–630), Appellant (C4–82–846).

Nos. C3–82–630, C4–82–846.

Supreme Court of Minnesota.

Oct. 7, 1983.

Rehearing Denied Nov. 16, 1983.

Dorsey & Whitney, William J. Hempel, John W. Windhorst, Jr., and Bruce Schnider, Minneapolis, for appellant, relator.

Hubert H. Humphrey, III, Atty. Gen., C. Paul Faraci, Deputy Atty. Gen., Philip J. Olfelt, Asst. Atty. Gen., St. Paul, for respondent State of Minn.

Alan L. Mitchell, County Atty., and Michael R. Dean, Asst. County Atty., Duluth, for County of St. Louis.

Tupper, Smith & Mattson, Kent P. Tupper, Walker, for respondent Minnesota Chippewa Tribe.

COYNE, Justice.

This case involves a challenge by the Federal Land Bank of St. Paul (the "Bank") to taxes assessed under Minn.Stat. § 273.13, subd. 2a (1982) by several counties on severed mineral interests held by the Bank. The Bank claims that it is exempt from the tax for two reasons: (1) the tax is not a tax on real estate "according to its value," and the Bank is therefore exempt under a federal statute (12 U.S.C. § 2055); and (2) the tax is unconstitutional notwithstanding this court's decision in *Contos v. Herbst,* 278 N.W.2d 732 (Minn.), *appeal dismissed* sub nom. *Prest v. Herbst,* 444 U.S. 804, 100 S.Ct. 24, 62 L.Ed.2d 17 (1979). The Minnesota Tax Court upheld the tax as applied to the Bank, and the Bank appealed. We reverse on the basis of the federal statute and therefore do not reach the constitutional issue.

The Bank refused to pay the taxes assessed for the years 1975, 1976, and 1977 on its severed mineral interests in land in St. Louis County[1] and filed answers in the district court under Minn.Stat. § 279.15 (1982). The proceedings were transferred to the tax court under Minn.Stat. § 271.01, subds. 5 and 6 (1982). The state and the county (hereinafter "the state") appeared on behalf of enforcement of the tax. The Minnesota Chippewa Tribe subsequently intervened in the tax court proceedings as an interested party.[2]

Both the Bank and the state moved for summary judgment. On July 23, 1980, the tax court ordered summary judgment for the state, finding that the Bank was not exempt under 11 U.S.C. § 2055 and that any constitutional challenge was disposed of by *Contos.* On the Bank's petition for rehearing, however, the court ordered an evidentiary hearing limited to the factual issue whether some severed mineral interests are valueless, making a tax on all such interests unconstitutional.[3] Following the hearing, the tax court found as fact that every mineral interest has some value, although the value of mineral interests may vary from place to place within the state, and, relying on *Contos,* concluded that the tax was constitutional. Proceedings for review of the tax court decision by certiorari and the Bank's appeal from the judgment entered thereon have been consolidated.

I.

a. *Tax on Severed Mineral Interests.* The severed mineral interest is a type of estate in real property—the owner of the estate owns an interest in the minerals produced from the property but does not own the surface of the property. Minn.Stat. § 273.13, subd. 2a (1982). Severed mineral interests exist in much of Minnesota and are especially common in northeastern Minnesota. *Contos v. Herbst,* 278 N.W.2d at 735. In *Washburn v. Gregory Co.,* 125 Minn. 491, 147 N.W. 706 (1914), this court held that severed mineral interests are separate interests in land, taxable separately from the surface interest and do not forfeit to the state for nonpayment of taxes *on the surface interest.* The legislature subsequently found that the severed mineral interests themselves are rarely taxed because of assessment difficulties. Minn.Stat. § 272.039 (1982). Therefore, separate ownership of surface and mineral estates was practiced widely as a means of holding mineral rights indefinitely while remaining ef-

1. The Bank paid taxes on one interest, but only as required by the county for the recording of a deed affecting surface rights.

2. Under Minn.Stat. § 273.13, subd. 2a, 20% of the tax on severed mineral interests is put into a fund to be used for business loans to Indians. Minn.Stat. § 116J.64, subd. 6 (1982).

3. The tax court found that the determination in *Contos* that all mineral interests have value was merely a determination that the district court's finding in that case was not clearly erroneous. Therefore, according to the tax court, the Bank in the present case had a right to try to prove otherwise.

fectively immune from taxation and tax forfeiture.

The legislature cited the above factors as reasons for enacting the Mineral Registration Act in 1973, Minn.Laws 1973, c. 650, art. XX. Minn.Stat. § 272.039 (1982). The Act was designed to enforce the registration of severed mineral interests under § 93.52 (enacted in 1969) and to tax those interests. First, the Act added § 93.55, providing that such interests would forfeit to the state if not registered within a specified period. Second, the Act imposed the tax involved in this case upon severed mineral interests not taxed under other provisions. Minn.Stat. § 273.13, subd. 2a (1982).[4] Third, the Act explicitly provided that severed mineral interests are subject to forfeiture for nonpayment of the above tax. Minn.Stat. § 272.04, subd. 1 (1982).

In *Contos v. Herbst,* 278 N.W.2d 732 (Minn.1979), plaintiff-owners of severed mineral interests (the plaintiffs included U.S. Steel and Burlington Northern Railroad) challenged the tax and registration forfeiture provisions of the Act. This court held that the tax was constitutional because (1) it was reasonable to classify severed interests separately from unsevered interests for taxation, and (2) property taxes need not be related to value. 278 N.W.2d at 736–41.[5]

b. *Federal Land Bank and Its Mineral Policies.* The Bank is a federally chartered instrumentality of the United States. One of twelve Federal Land Banks, it was established in 1917 pursuant to the Federal Farm Loan Act (Acts of July 17, 1916, chapter 245, 39 Stat. 360) and is presently governed by 12 U.S.C. §§ 2011–2055. The Bank provides long-term agricultural loans to farmers in Michigan, Minnesota, North Dakota, and Wisconsin. Each borrower becomes a member of a Federal Land Bank Association; the Associations own the stock of the Bank. The Associations are similar to cooperatives; the net earnings of the Bank eventually inure to its individual borrowers in the form either of dividends or of lower interest rates on their variable interest loans.

The Bank obtains severed mineral interests by reserving these interests when it sells any property upon which it has foreclosed. The Bank initiated this practice in the 1930's, when it foreclosed on many farms and could not recover the unsatisfied debt on resale. Most of the Bank's interests are 50% interests in perpetuity. The remaining 50% interests belong to the surface owners and are therefore *unsevered* interests. As of the end of 1980, the Bank owned about 3,200 mineral interests situated in 85 of Minnesota's 87 counties and covering about 484,000 gross mineral acres. These Minnesota interests have provided almost no mineral income for the Bank. It is the Bank's policy never to release or sell its severed mineral interests except to avoid hardship to the surface owner or expense to the Bank.

## II.

The Bank has neither pleaded nor proved that the tax on severed mineral interests, Minn.Stat. § 273.13, subd. 2a (1982), discriminates against the Bank. Nor has the Bank convinced us that the tax is unfair.[6] Indeed, we agree with the tax court that the nondiscriminatory tax in question ought to be deemed to come within the basic spirit

---

4. Mineral interests which have been valued are taxed on the basis of value. Unmined iron ore is taxed on the basis of value pursuant to Minn.Stat. § 273.13, subd. 2, or § 273.15 (1982). Unmined taconites and iron sulphides are assessed and taxed according to value subject to a maximum tax of $10.00 per acre. Minn.Stat. § 298.26 (1982). All other severed mineral interests, to the extent they can be valued, are susceptible to ad valorem taxation pursuant to Minn.Stat. § 272.04 (1982).

5. However, this court struck down as unconstitutional the forfeiture provisions because adequate notice and hearing were not provided. Minn.Stat. § 93.55 was subsequently amended to provide notice and a hearing before forfeiture. Minn.Laws 1979, c. 303, art. 10, § 1.

6. See *Contos v. Herbst,* 278 N.W.2d 732 (Minn. 1979) (this unique method of taxing severed mineral interests does not violate the uniformity clause of the Minnesota Constitution. Minn. Const. art. 10, § 1).

of the Congressional waiver of immunity from tax contained in 12 U.S.C. § 2055. Unfortunately, however, it is outside the letter of the waiver and we are, therefore, required to recognize the Bank's statutory immunity from the tax imposed by Minn. Stat. § 273.13, subd. 2a (1982).

Section 2055 provides, in relevant part:

Every Federal land bank and every Federal land bank association and the capital, reserves, and surplus thereof, and the income derived therefrom shall be exempt from Federal, State, municipal, and local taxation, *except taxes on real estate* held by a Federal land bank or a Federal land bank association *to the same extent, according to its value, as other similar property held by other persons is taxed.* * * *

(Emphasis added). The exemption from state taxation and attendant waiver of immunity were part of the Federal Farm Loan Act of 1916, Act of July 17, 1916, ch. 245, 39 Stat. 360.[7] Although the clause— "to the same extent, according to its value, as other real estate is taxed"—appeared for more than 100 years in the waiver of immunity contained in the National Banking Act[8] and although the same clause appears in statutes exempting other federal instrumentalities from state taxation,[9] we are aware of no cases in which application of the waiver of immunity to a flat or area-based general distribution tax on real estate has been at issue. The plain language of section 2055, however, does not admit of construction. It provides, in perfectly straightforward terms, that the Bank is exempt from state taxes except nondiscriminatory value-based taxes on real estate.

■ The state commends to us the statement in *Swords v. Nutt*, 11 F.2d 936, 936 (9th Cir.1926) on which the tax court relied: "[T]he sole purpose of section 5219 [that section of the National Banking Act upon which section 2055 was patterned] is to protect the real property of national banks against unequal assessments or assessments that shall discriminate against the same." The *Swords* case, which held that the real estate of a national bank was not exempt from a nondiscriminatory special assessment because it was a payment for improvements directly benefitting the land and not a tax, is inapposite.[10] There is no doubt that the obligation imposed by § 272.13, subd. 2a, is a tax. Furthermore, to limit the tax immunity provided by § 2055 to *discriminatory* real estate taxes, whether or not value-based, would require us to ignore the phrase "according to its value" or treat it as meaningless. But every word and phrase of the statute should be given meaning if possible. *E.g., Gale v. Commissioner of Taxation*, 228 Minn. 345, 37 N.W.2d 711 (1949).[11]

7. 12 U.S.C. § 2055 was adopted in 1971, Pub.L. 92–181, Title I, § 1.21, 85 Stat. 590, but the operative language involved here has remained substantially unchanged since 1916. 12 U.S. C.A. §§ 931, 933 (West 1969); Federal Farm Loan Act of 1916, ch. 245, 39 Stat. 360, § 26.

8. The genesis of section 2055 is probably a section of the National Banking Act of 1864, Act of June 3, 1864, ch. 106, § 41, 13 Stat. 111, Rev.Stat., § 5219, which stated that national banks were exempt from state taxation, except taxes imposed on real estate "to the same extent, according to its value, as other real estate is taxed." This provision was carried forward in 12 U.S.C. § 548, 12 U.S.C.A. § 548 (West 1969), until the tax exemption for national banks was repealed in 1969.

9. *E.g.,* 12 U.S.C. §§ 1433 (Federal Home Loan Banks) and 1825 (Federal Deposit Insurance Corp.), both enacted in the 1930's, and 12 U.S.C. § 3019(a) (National Consumer Cooperative Bank, established in 1978).

10. There is also considerable doubt about the vitality of the holding in *Swords. E.g., U.S. v. City of Adair*, 539 F.2d 1185 (8th Cir.1976) (Community Credit Corporation declared immune from special assessment because Congress had not expressly waived immunity from special assessment, which was in essence a tax).

11. The absence of the phrase "according to its value" in the tax exemption statutes of three other federal instrumentalities is a further indication that ignoring its presence in § 2055 is inappropriate. 12 U.S.C. §§ 1768 (credit unions), 2098 (production credit associations), 2134 (banks for cooperatives), all include a waiver of immunity from taxation of tangible personal, as well as real, property "to the same extent as similar property is taxed."

The requirement that the tax be related to value limits the tax which a state may levy on the Bank's real estate to an ad valorem (literally "according to value") tax, for which real estate is assessed and the tax rate is applied on the same basis to the assessed value of all real estate similarly situated in the taxing district. *Cf. Miners National Bank of Butte v. Silver Bow County*, 116 Mont. 31, 148 P.2d 538 (1944); *Land Title Bank & Trust Co. v. Ward*, 20 F.Supp. 810 (E.D.Pa.1937) (interpreting without discussion, but in a different context, the waiver of immunity formerly applicable to national banks). It is clear to us that the tax imposed by § 273.13, subd. 2a, on severed mineral interests is not an ad valorem tax. It is a flat tax of $.25 per acre or $2.00 per interest. The state contends that it is simply a "minimum" tax within the ad valorem system. But the tax never varies according to the location or quality of the mineral interest; by its own terms it is inapplicable to mineral interests whose value has been determined. The very reason for the flat tax is that very few such interests will ever be assessed. Minn.Stat. § 272.039 (1982). An ad valorem tax, on the other hand, even if it contained some provision for a minimum tax, would vary to some extent from interest to interest because, as the tax court found, "the value of

an interest in one part of the state may vary from that in another." Since the severed mineral interest tax pursuant to § 273.13, subd. 2a, is unrelated to value, section 2055 precludes its imposition on the Bank's interests.[12]

Our conclusion is reinforced by the standard applicable in the interpretation of statutes protective of federal instrumentalities. A federal instrumentality is immune from all state taxes, whether or not discriminatory,[13] unless the state can show that Congress clearly and expressly has waived the immunity. *E.g. First Agricultural National Bank of Berkshire County v. State Tax Commission*, 392 U.S. 339, 88 S.Ct. 2173, 20 L.Ed.2d 1138 (1968) (immunity from a state sales and use tax on personal property was not waived clearly in the national bank statute, so the bank was immune); *Federal Reserve Bank of St. Louis v. Metrocentre Improvement District # 1*, 657 F.2d 183, 186 (8th Cir.1981) (a special assessment was not a real estate "tax"; therefore, Congress has not waived immunity); *Reconstruction Finance Corporation v. Texas*, 229 F.2d 9 (5th Cir.1956) (immunity was not waived as to penalties and interest on real estate taxes); *U.S. v. County of San Diego*, 249 F.Supp. 321 (S.D.Cal.1966) (Fed-

---

12. See *State v. Lakeside Land Co.*, 71 Minn. 283, 73 N.W. 970 (1898) (one-cent-per-ton tax on iron ore held unconstitutional under former uniformity clause of Minnesota Constitution). In *Contos*, in which we upheld the tax on severed mineral interests, we distinguished *Lakeside Land Co.*, noting that since 1906 the uniformity clause has not required taxes to be related to value. *Contos* implied, however, that if a relation to value were required, the tax would have been impermissible.

13. It is not clear how this presumed immunity came about. *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 4 L.Ed. 579 (1819) held that a federal instrumentality is constitutionally immune from *discriminatory* taxes because "the power to tax is the power to destroy," and a state should not have such power over an arm of the federal government. *Id.* 17 U.S. (4 Wheat.) at 427–428. Only after Congress had passed statutes immunizing instrumentalities from state taxes did the United States Supreme Court extend the constitutional immunity to nondiscriminatory state taxes in order to justify a statutory presumption of immunity. *Aus-*

*tin v. The Alderman*, 74 U.S. (7 Wall.) 694, 19 L.Ed. 224 (1868). The constitutional immunity and the attendant presumption against the state do not appear to be necessary where the tax is nondiscriminatory, i.e., that the state legislature has imposed the tax on its own constituents as well as the federal instrumentality. *See, First Agricultural National Bank of Berkshire County v. State Tax Commission*, 392 U.S. 339, 348, 88 S.Ct. 2173, 2178, 20 L.Ed.2d 1138 (1968) (Marshall, J. dissenting); J. Ely, *Democracy and Distrust* 85–86 (1980). We also note that the presumption against nondiscriminatory state taxation should be less strong when the tax is on land, over which the states exercise a peculiar sovereignty. *See McCulloch*, 17 U.S. (4 Wheat.) at 436, in which Justice Marshall stated, "This opinion does not deprive the states of any resources *which they originally possessed.* It does not extend to a tax paid by the real property of the bank, in common with the other real property within the state, * * *." (Emphasis added).

eral Housing Authority was immune from tax on personal property used in the operation of real property). Although the state contends that the Bank is a privately owned corporate entity which holds its severed mineral interests for the benefit of its shareholders and, hence, must demonstrate its entitlement to tax exemption, it was held in *Federal Land Bank of St. Paul v. Bismarck Lumber Co.*, 314 U.S. 95, 102, 62 S.Ct. 1, 5, 86 L.Ed. 65 (1941), that the acquisition of real estate through foreclosure is part of the general lending function of the Bank and is covered by the immunity provided by 12 U.S.C. § 2055. Inasmuch as there has been no showing of a clear and express waiver, the Bank's severed mineral interests are immune from the tax imposed by Minn.Stat. § 273.13, subd. 2a (1982).

Since we conclude that 12 U.S.C. § 2055 precludes application of the severed mineral interest tax to the Bank, we do not reach the issue of the constitutionality of the tax.

Reversed.

YETKA, Justice (dissenting).

I dissent. I believe the minimum tax per acre is an ad valorem tax. I see no necessity that an ad valorem tax be a perfect tax—one based exactly according to market value. It would be difficult for the state to measure the value of minerals on each parcel without drilling and testing. Therefore, it sets a minimum tax per acre on those reserving such minerals. Presumably, in reserving minerals, the owner is recognizing some value. When the tax is not discriminatory and is for such a modest amount, I believe it is reasonable to read section 2055 as permitting the state to collect the tax.