THE STATE OF MONTANA EX REL. WRIGHT HAGERTY, FRED CONWAY AND LEONA CONWAY, AND MRS. BRIAN CONNELLY, PLAINTIFFS AND RESPONDENTS, THE BLACK-FEET TRIBE OF THE BLACKFEET INDIAN RESERVATION, MONTANA, INTERVENER AND RESPONDENT, v. J. E. RAFN, H. R. CARLSON AND OAKLEY COFFEE, AS THE MONTANA LIQUOR CONTROL BOARD, DEFENDANTS AND APPELLANTS.

MARGARET R. WALTER AND JOE H. LEWIS, INTERVEN-ORS AND APPELLANTS.

No. 9492.
Submitted May 26, 1956. Decided June 27, 1956.
Rehearing Denied January 4, 1957.
304 Pac. (2d) 918.

Mr. Arnold H. Olsen, Atty. Gen., Mr. Hubert J. Massman, Asst. Atty. Gen., Mr. H. J. Luxan, Jr., Spec. Asst. Atty. Gen., for defendants and appellants.

Mr. Wesley W. Wertz and Mr. Charles V. Huppe, Helena, for intervenors and appellants Walter and Lewis.

Messrs Loble and Loble and Mr. Gene A. Picotte, Helena, Mr. H. Cleveland Hall, Great Falls, for plaintiffs and respondents.

Messrs. Aronow & Hoyt, Shelby, Mr. Arthur Lazarus, Jr., Washington, D.C., for intervener and respondent.

Mr. Luxan, Mr. Wertz, Mr. Huppe, Mr. Henry Loble, Mr. Hall and Mr. Aronow argued orally.

MR. JUSTICE ANDERSON:

This action was commenced in the district court to prohibit the Montana Liquor Control Board from issuing beer and liquor licenses to persons other than those who had permits from the Blackfeet Tribe to deal in liquors upon the Blackfeet Reservation in the State of Montana.

Section 1161, Title 18, U.S.C.A., and Blackfeet Tribal Ordinance No. 134-53, as well as the statutes of Montana dealing with liquor and beer licenses, and the powers of the Montana Liquor Control Board were involved in the dispute below.

After hearing the district judge prohibited the Montana Liquor Control Board from issuing licenses to the parties to this action who did not have a tribal permit to engage in the liquor business on the Blackfeet Reservation and then issued a peremptory writ of mandamus compelling the Montana Liquor Control Board to issue licenses to those parties to this cause who had a permit to deal in liquors on the reservation from the tribal council.

Returns to the writ of prohibition and writ of mandate were made on August 31, 1954, whereby it was set out that there had been an effort made in the court below to stay the issuance of the peremptory writ until the supreme court could act upon application for supersedeas, but that the court below refused the request and issued the writs on that day. Further showing is that there was application to this court to stay the proceeding below pending the outcome of the appeal here. However this court was in recess at the time and thus had no opportunity

to act upon that request prior to the issuance of the peremptory writ.

We deem it unnecessary to go into the merits. The cause as presented to us is moot. The motion before us to dismiss on that ground must be sustained.

The final judgment below was entered on August 9, 1954. Consistent with that judgment there issued from the district court to the appellant members of the Montana Liquor Control Board a writ of prohibition restraining them from granting liquor and beer licenses to three named persons, two of whom as intervenors in these proceedings are likewise appellants here. The court also issued a writ of mandate commanding the liquor control board to issue Montana liquor and beer licenses to the relators, who assert that they alone are entitled to such licenses for the sale of liquor and beer at retail on the Blackfeet Indian Reservation at Browning, Montana.

On August 31, 1954, a return was made to the writs showing compliance therewith, particualrly that on August 31, 1954, licenses were issued by the board to relators, and by them deposited with the clerk of the lower court to be delivered to the relators if the lower court mad the determination that an appeal therefrom taken to this court on August 25, 1954, from the judgment of August 9, 1954, had not the legal force and effect of staying execution of the judgment or otherwise relieving defendants, namely the board, of the obligation of complying with the writ of mandate, pending the determination of the appeal.

Upon the filing of this return and the same day the district court found that the appeal so taken did not stay proceedings in that court and accordingly ordered the licenses in dispute delivered to relators under protest and involuntarily, for the reasons assigned in the returns to the two writs. This the clerk did and ever since the relators in reliance upon these licenses and upon certain tribal permits which they held, have been engaged in the sale of liquor and beer at retail in the town of

Browning, Montana, and have there maintained places of business for that purpose.

The appellants have nevertheless perfected their appeal and are here arguing that because their compliance with the mandate of the lower court was coerced by the threat of punishment for contempt had they disobeyed, they have by obeying lost none of their rights to appeal and that they are entitled to a review here.

We may concede that appellants did make their returns to the writs and obeyed the commands of the writs issued by the district court because they had to, and that obedience thus compelled is involuntary, and that if this were all that had been done and was the entire case before us, we would be called upon to hear and decide the merits of this appeal; notwithstanding a contrary dictum in In re Black's Estate, 32 Mont. 51, 79 Pac. 554, to the general effect that when a judgment has been paid it has passed beyond review, the satisfaction of it being the end of the proceeding. This is not always true in every case even of a judgment for money damages when payment is voluntarily made and generally speaking is clearly an incorrect statement of the law when payment or performance otherwise is involuntary. See 4 C.J.S., Appeal and Error, section 214, a, b, c, pages 409-413; 2 Am. Jur., Appeal and Error, section 221, pages 981, 982; 2 Freeman on Judgments, 5th Ed. section 1165, pages 2406-2410; Webb v. Crane Co., 52 Ariz. 299, 80 Pac. (2d) 698.

Nonetheless we may not be called upon to review here, and perhaps reverse, if our review is to no purpose and our reversal without effect. Putting it another way, we will dismiss the appeal if the question submitted for decision is moot. That the questions here submitted are moot cannot be denied. And they are moot whether the relators obeyed the writs issued against them on the judgment below voluntarily or involuntarily. Since the writs have been obeyed the persons named in the licenses issued have acted upon the permission given them thereby to dispense liquors and beer at Browning. Presumably

each has a tavern, has invested capital in his respective enterprise as he was lawfully entitled to do, and has acquired patrons and customers, and has what is commonly known as an established and going business, all of which is of some value. If the appellants were to prevail in this action and upon a reversal we were to order the board and court below to cancel out the licenses now outstanding, the status quo of the parties to this litigation could not be restored as it was when the judgment of the lower court was entered on August 9, 1954.

On the record before us it is not even suggested that if we were to sustain the appellants' contention we could also erase what has taken place here since August 9, 1954, and put the board and the applicants again in the position they occupied at the time their applications were made.

We need not go beyond the decisions of this court for authority that the questions submitted on this appeal then are moot. State ex rel. Brass v. Horn, 36 Mont. 418, 93 Pac. 351; State ex rel. Begeman v. Napton, 10 Mont. 369, 25 Pac. 1045; State ex rel. Kurth v. Grinde, 96 Mont. 608, 32 Pac. (2d) 15. We do not have here a case where, were we to reverse, we could effect restitution under R. C. M. 1947, section 93-8024, as we were able to do in State ex rel. Kurth v. Grinde, supra. For that reason we may not review because any wrong done in the issuance of the writ, which went to the board is now beyond remedy. We therefore must dismiss.

Nothing in this opinion is to be understood as expressing or implying our approval of the judgment of the district court which this appeal brings before us. We do not here reach the merits at all. Nothing here should be considered as to indicate our approval of the manner in which the lower court moved these proceedings to a final judgment, and that judgment to execution during the summer recess of this court and over the protests of the appellants.

This case comes squarely within the rules announced in State ex rel. Brass v. Horn, supra [36 Mont. 418, 93 Pac. 352]:

"It appears from the record and briefs of counsel that the

defendant fully complied with the mandate of the district court on the same day the appeal was taken, and that the only purpose sought by the appeal is to have this court decide the moot question whether the statutes defining the jurisdiction of police and justice of the peace courts authorize a change of venue from the former to the latter in cases arising under the ordinances of a city and prosecuted in the name of the city. In State ex rel. Begeman v. Napton, 10 Mont. 369, 25 Pac. 1045, this court held that jurisdiction would not be taken of an appeal from a judgment of a trial court directing a writ of *mandamus* to issue, when it appeared that the writ had been issued and obeyed pending the appeal. The court said: ''We are of the opinion that it is not a safe precedent to depart from the rule that courts will hear only genuine controversies, and will not tender advice upon matters not in litigation.' In Snell v. Welch, 28 Mont. 482, 72 Pac. 988, an injunction had been issued by a district court restraining the defendants from letting contracts under an act of the Legislature providing for a uniform series of text-books for use in the public schools. The defendants appealed. Pending the appeal the parties settled their differences and the contracts were let. The court, on the authority of State ex rel. Begeman v. Napton, supra, refused to hear the appeal, saying: 'There is nothing in this case now for us to decide. It has been disposed of by the parties themselves pending the appeal.' Again, in Re Black's Estate, 32 Mont. 51, 79 Pac. 554, there was an appeal by two of the distributees from a decree of distribution and from an order denying them a new trial. Immediately after the decree had been made and entered, but before the order denying the motion had been made, the appellants made settlement with the administrator, receipting him in full for their distributive shares. Upon this fact being made to appear to this court, the appeals were dismissed. It was held to be an insuperable objection to the entertainment of the appeals that, in case of a reversal of the decree, the parties would not stand relatively in the same position as when

the decree was entered, and so the district court could not retry the issues and do justice to the parties.''

Paraphrasing language used in the Brass case to make it apply in the instant case: So here it would serve no useful purpose to reverse the judgment appealed from because the licenses have been issued and the parties to whom they were issued have been operating liquor establishments since their issuance. The parties cannot, under these circumstances, be put in *statu quo*. The very purpose of an appeal is to relieve a party who has been aggrieved by the judgment or order complained of, and to restore him to the position occupied by him in the controversy before the judgment was rendered or the order made. To the same effect see: Betts v. State ex rel. Jorgensen, 67 Neb. 202, 93 N.W. 167; Jacksonville School District v. Crowell, 33 Or. 11, 52 Pac. 693; San Diego School District of San Diego County v. Board of Supervisors, 97 Cal. 438, 32 Pac. 517.

In construing section 1733, Code of Civil Procedure 1895, which, as it relates to a judgment granting a writ of mandamus, is identical with R.C.M. 1947, section 93-8014, this court in the Brass case held that statute no bar to stay granted by this court where on timely application made to this court after the appeal had been perfected below (the exact situation presented here) a writ of supersedeas will issue in this court's discretion to stay the enforcement of the judgment of the district court and the execution of its peremptory writ. In these circumstances the appellant members of the Montana Liquor Control Board might well have delayed their compliance with the command of that writ until after their application to this court had been heard and denied. In doing so they would not have invited punishment as for a contempt. For where, as here, the court below showed no inclination to preserve the *statu quo,* nonetheless under the pronouncement in the Brass case, supra, it could not have invoked its contempt powers at least until this court had acted on the application, which was timely made, for a writ of supersedeas.

Let the appeal be dismissed.

MR. JUSTICES DAVIS and BOTTOMLY, concur.

MR. CHIEF JUSTICE ADAIR: (dissenting).

This is a timely and proper appeal from a final judgment entered August 9, 1954, in the district court of Lewis and Clark County adjudging, *inter alia*, that the Montana Liquor Control Board is without right or authority to issue licenses for the retail sale of beer or liquor within the exterior boundaries of the Blackfeet Indian Reservation, including the town of Browning, Montana, unless the applicant therefor has first obtained a tribal permit from the Blackfeet Tribal Business Council, in accordance with Blackfeet Tribal Ordinance No. 134-53 and prohibiting the Montana Liquor Control Board from granting or issuing to Margaret R. Walter, Joe H. Lewis and Thomas E. Rodgers, Jr., licenses to sell liquor and beer at retail in the town of Browning, Montana, or within five miles thereof, within the Blackfeet Indian Reservation in Montana, except that said board may issue to Thomas E. Rodgers, Jr., a license to sell beer only at retail.

Both the Blackfeet Indian Tribe and the Montana Liquor Control Board are subject to the laws enacted by the Congress of the United States as to matters within the boundaries of the Blackfeet Indian Reservation and the local Blackfeet tribal governing bodies are entitled to a voice as to who, among various persons fully meeting the qualifications prescribed by the state law, shall be permitted to engage in the beer or liquor traffic on the Indian Reservation.

The majority opinion states that it is unnecessary to go into the merits of the cause and decide the questions presented by the appeal for the reason that the cause as here presented has now become moot. I am wholly unable to subscribe to this view. As was said in State ex rel. Henderson v. Cook, 353 Mo. 272, 182 S.W. (2d) 292, at page 294: "We think that it is not a moot case, for the reason that these parties have a right to a final determination of their rights. Moreover, the public will be affected by the proper enforcement of the liquor laws, and

there is, also, a matter of costs. State ex rel. Brown v. Bird, 228 Mo. App. 800, 73 S.W. (2d) 821.''

This appeal should be decided on its merits. It appears to me that the judgment of the trial court is correct and it should be affirmed.

MR. JUSTICE ANGSTMAN: (concurring in dissent).

I concur in the conclusion of Mr. Chief Justice Adair that the case should be decided on its merits.

I express no opinion as to whether the trial court's opinion was or is right or wrong on the merits of the case since that question is not considered in the majority opinion.