GALLATIN TRUST AND SAVINGS BANK, a corporation, Plaintiff and Respondent, v. MONA J. HENKE, and Creditor's Recovery Service, Defendant and Appellant.

No. 11549.
Submitted Sept. 15, 1969.
Decided Nov. 6, 1969.
461 P.2d. 448.

Libra & Bolkovatz, William Romine (argued), Helena, for defendant and appellant.

Lyman H. Bennett, Jr. (argued), Bozeman, Thomas E. Towe (argued), Billings, for plaintiff and respondent.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is a consolidated appeal from two summary judgments. Plaintiff filed separate actions against the defendant, Henke.

The first action was in two counts on two promissory notes totaling $10,000 plus interest and attorney fees and to foreclose on a certain trailer house, alleged to be security for the promissory notes. This action was against Mona J. Henke as defendant.

The second action was in four counts, alleging default in payment on four promissory notes in the total sum of $25,000 plus interest and attorney fees. In this action application of security on the notes was also sought. The security was in the

form of a certificate of deposit pledged as security for the loans. This action was against defendant Creditor's Recovery Service, Inc. and Mona J. Henke.

Answers were made denying liability on the part of both defendants and setting up affirmative defenses, one of which was that Henke had not individually endorsed one of the notes but had signed it only as an officer of the defendant corporation. A counterclaim was made for general and punitive damages. The pleadings and briefs on the part of defendants are most difficult to follow since in one breath the defendant Henke is an individual, and in the next an officer of the defendant corporation. However, we need not dwell long on the distinction because subsequently Henke testified by deposition in effect that she was in the same position either way.

The defenses and counterclaims mentioned above set up allegations of fraud, misrepresentation and undue influence and alleged damages because of them.

For clarity hereinafter the plaintiff will be referred to as the Bank, defendant corporation as C.R.S. and defendant Henke as Henke.

Depositions of defendant Henke and her brother, one Elmer Foster, were taken. The deposition of Henke becomes of importance. Motions for summary judgment were made.

In discussing a motion for summary judgment, this Court in Silloway v. Jorgenson, 146 Mont. 307, 406 P.2d 167, said:

" '* * * the party opposing motion [for summary judgment] must present facts in proper form—conclusions of law will not suffice; and the opposing party's facts must be material and of a substantial nature, not fanciful, frivolous, gauzy, nor merely suspicions.' " 6 Moore's Federal Practice 2d, § 56.15(3), pp. 2346, 2347; Hager v. Tandy, 146 Mont. 531, 410 P.2d 447 (1965).

We hereinafter analyze Henke's position from her deposition. Her deposition at times would fit the categories described in Silloway v. Jorgenson as fanciful, frivolous, and gauzy, if we

understand the terms. While the defendant repeatedly asserts that they were genuine issues of fact, any analysis of Henke's deposition indicates otherwise.

In October of 1965, one Robert Grover applied for a loan with the Bank for his private corporation Creditor's Recovery Service. C.R.S. was engaged in the collection business. Grover proposed as security the co-signature of defendant Henke, a sister of one of the C.R.S. employees.

Henke agreed to guarantee up to $30,000 and signed a note accordingly. Of significance, there was an agreement between Henke and Grover that Henke was to receive 10 percent as a kickback and she did receive $3,000 the same day from Grover. Grover received $10,000 from the Bank. Shortly thereafter he received another $5,000. As part of the arrangements for security, Henke was to leave two $10,000 Certificates of Deposit with the Bank. It developed that one $10,000 Certificate of Deposit was already encumbered by a loan at Plentywood so only one Certificate of Deposit was furnished. That Certificate of Deposit contained not only Henke's name, but the names of Henke's three children. This Certificate of Deposit was endorsed by Henke who was legal guardian of the children and she testified she was authorized to act on their behalf. More will be said about this later.

The security arrangements then were only partly completed. C.R.S. was obviously having financial problems, and the bank only advanced the $15,000 as described previously. C.R.S. was unable to pay the notes as they became due. When the Bank pressed for payment, Henke made arrangements to purchase Grover's stock. She purchased his stock for $2,500 upon the advice of her brother Joe and her own lawyer. According to Henke she also relied on the advice of Mr. Updike, the executive vice-president of the Bank.

After this transaction was completed, Henke as the new president of C.R.S. renewed the $15,000 loan and borrowed $5,000 more. Subsequently she borrowed $3,000 and $2,000

more. These four loans are the subject of the second action here. Henke testified in her deposition that all four notes were to be co-signed by her in her individual capacity; however, one was not.

In addition to the above loans, Henke obtained two personal loans, one in the amount of $5,250, the other $4,750. These two loans were secured by the trailer house mentioned earlier as the subject of the foreclosure action.

Henke claims in her answer and counterclaim that the Bank harassed her by demanding payment of the C.R.S. loans in her capacity as guarantor while Grover was still the owner of the stock. Then she claims that before she purchased the C.R.S. stock the Bank promised to find a buyer who would purchase her interest for $50,000. In her deposition Henke stresses this promise to find a buyer.

While we have two separate actions here, the defenses and counterclaims are for all practical purposes identical. These defenses basically are that there was fraud, misrepresentation and undue influence in: (1) obtaining the guarantee on the first note, (2) harassing the defendant, (3) loaning an additional $5,000 after the first $10,000 loan, and (4) promising to find a purchaser for the collection business.

As to (1) above, Henke claims that while she signed the $30,000 note, she was only to have secondary liability. Then, too, that the note was only to be for so much as she subsequently approved. Yet by her own version she received 10 percent or $3,000 as a kickback or consideration for guaranteeing not $10,000, but the total amount. Not only that, but she later entered into a new agreement with full knowledge of the situation. This first contention is frivolous by any standards and hardly worth discussion.

Likewise the so-called harassment is not substantiated in any credible manner.

Concerning (3) above, the loan of an additional $5,000 after the initial $10,000 loan is refuted by defendant Henke's

own actions. She readily admitted signing the $30,000 note, receiving 10 percent "interest" or kickback for doing it. Then she related that later she returned to Grover $1,500 seemingly to prove the 10 percent arrangement, and in so doing convincingly disproving her own allegation of not having approved the $5,000 loan. These contentions are simply without any merit.

■■ Contention (4), that the Bank acting through Updike promised to find a purchaser for Henke's Corporation, Creditor's Recovery Service, starts out as if Mr. Updike were acting in his own behalf for a commission of 5 percent; a transaction not within normal banking procedures. Updike is not named as a party. The supposed purchaser was some unnamed man from South Dakota, according to Henke. Even by Henke's own statements, at their best, the entire alleged fraud was nothing more than a promise of future action. How much a promise could be actionable fraud escapes us. The mere making of a promise which the promisor fails to keep is not actionable fraud. International Harvester Co. v. Merry, 60 Mont. 498, 199 P. 704, and R.C.M.1947, § 13-308. Without quoting Henke's deposition, we merely say that there is no evidence to support any allegation of fraud.

Defendant's allegations of fraud, misrepresentation and undue influence are not supported by her testimony in her deposition in a genuine and substantial evidentiary manner.

■ Previously we said more would be said later about the Certificate of Deposit in the amount of $10,000 which Henke endorsed and put up as security. Henke's name as well as those of her three children appeared on the Certificate and the court ordered that the Certificate be cashed and the proceeds applied to the judgment. Henke testified by deposition that she was guardian and had authority. If any rights were affected adversely, it would have been those of Henke's three children and they may yet have an action against their guardian, their mother. But, so far as Henke is concerned here, she

did just what she says she had authority to do. This does not create a fact issue.

Finally, appellant Henke urges separately from defendant C.R.S. that she should not be personally liable but that she only signed as an officer of the corporation. This so-called defense almost belies discussion since Henke so obviously acted in her own right that any corporate veil discussion needs embellishment with nonexistent facts. We shall not attempt such an exercise in futility.

While we have heretofore discussed the merits of this case, we choose to discuss the motion to dismiss the appeal. After orders for summary judgment were made in each case, supersedeas bonds were set and a time fixed for posting the same. The bonds were not posted and the defendants appealed to this Court for a stay of execution. The application was denied by this Court. Notice of appeal was filed August 2, 1968 in both cases. Executions were issued in both cases and on January 28, 1969, satisfactions of judgment were entered. Also, and prior to this on September 9, 1968, the lower court issued an order directing the cashing of the Certificate of Deposit without the endorsement of Mona Henke, as guardian. This order was complied with.

The defendant Henke's interest in a ranch in Sheridan County was sold and we are told in the briefs that this money was used to satisfy the judgment. Various other changes of position have occurred. Actions were filed by the respondent bank to set aside certain sales of property as being in fraud of creditors.

On January 16, 1969, this Court made an order denying any relief on stay of executions and any relief on saving the appellants' rights on appeal; they having failed to post the supersedeas bond.

Finally, on March 7, 1969, the respondent moved to dismiss the appeals. The motion recited the credits on the judgments and payment of the balance owing on the judgments with

the request that the appeals be dismissed as moot. We denied the motions to dismiss at that time, but now determine said motions to dismiss were proper. The motions to dismiss were revived, briefed and argued.

The rule is well established that a supersedeas bond to preserve the rights of the unsuccessful party may be required and failure to post it makes the rights of the parties subject to execution, subsequent satisfaction of the judgment and possible mootness so far as appeals are concerned. See Rule 7(a), M.R.App.Civ.P.; In re Black's Estate, 32 Mont. 51, 79 P. 554; Fox v. Hacker, 68 Mont. 413, 220 P. 749; Paulich v. Republic Coal Co., 97 Mont. 224, 33 P.2d 514.

In State ex rel. Hagerty v. Rafn, 130 Mont. 554, 304 P.2d 918, the rule expressed in In re Black's Estate, supra, to the effect that when a judgment has been paid it has passed beyond review, the satisfaction of it being the end of the proceeding, was criticized. This Court in the Rafn case appeared to have set up a new rule to the effect that where rights of third persons are involved and the parties cannot be restored to their original position the appeal becomes moot.

In any event whether the Rafn case in 1956 intended to change the rule or not, Rule 7(a) clearly provides the only methods of staying judgments. In this case efforts were made, but no supersedeas bond was ever filed. This Court specifically denied relief in the way of a stay of execution of the judgments.

Thereafter on January 28, 1969, the judgments were satisfied. When the judgment is paid it passes beyond review; its satisfaction ends the proceeding. The motions to dismiss the proceedings are granted.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES JOHN C. HARRISON and HASWELL, and the HONORABLE THOMAS DIGNAN District Judge, concur.