GALLATIN TRUST AND SAVINGS BANK, a corporation, Plaintiff and Respondent, v. ELMER FOSTER, GAIL M. FOSTER, MELVIN FOSTER, AMERILIS FOSTER, JOSEPH JOHNSON, MONA J. HENKE, and WILBUR DAMSTROM, Defendants and Appellants.

No. 11530.
Submitted Sept. 15, 1969.
Decided Nov. 19, 1969.
461 P.2d 452.

Libra & Bolkovatz, A. L. Libra, argued, Small and Cummins, Floyd O. Small, argued, Helena, Conrad Fredericks, Big Timber, for defendants and appellants.

Lyman H. Bennett, Jr., argued, Bozeman, Thomas E. Towe, argued, Billings, for plaintiff and respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

This is an appeal by various defendants from two summary judgments entered against them arising out of the construction financing of two homes in the Bozeman area. Both summary judgments were in favor of the Gallatin Trust & Savings Bank, the plaintiff in two separate actions consolidated in the district court of Gallatin county before Hon. W. W. Lessley, district judge.

The basic factual background of the controversy is contained in the depositions of the parties. In August 1965, one Robert Grover brought Elmer and Melvin Foster into the Gallatin Trust & Savings Bank in Bozeman to secure financing for two houses that the Fosters intended to build in the same area as Grover, using the same contractor. Mr. Updike, the executive vice president of the Bank, after investigation made a commitment on financing. Thereafter on September 21, 1965, a loan of $10,000 was made to Elmer Foster and a loan of $15,000 was made to Melvin Foster. Subsequently there was another advance of $5,000 on October 15, 1965; an advance of $2,500 on October 20; and another of $2,500 on October 29. At this point a total of $35,000 had been advanced for the construction of the two Foster houses.

At this time the Bank refused to make any further loans because, in the Bank's opinion, there was inadequate security. The security at this time for the loans was a mortgage on the property on which the houses were being built, the cosignature of Mona Henke, a relative of one of the Fosters, and an assign-

ment of the proceeds of an insurance claim in an amount slightly over $7,000.

Thereafter in March 1966, an agreement was reached, reduced to writing, and executed by the Fosters, their contractor, the Bank, and two relatives of the Fosters as accommodation co-signers, generally providing that the Bank advance an additional $29,780.84 to complete the two Foster houses; that Mona Henke and Wilbur Damstrom, relatives of the Fosters, would co-sign the Fosters' promissory note to the Bank in the amount of $64,780.84, representing all loans by the Bank to the Fosters, and the contractor agreed to complete the two Foster houses according to FHA requirements within 140 days. The Bank agreed to deposit most of the additional loan in a special account known as the Foster Construction Account and to disburse funds therefrom only upon invoices for labor and materials presented by the contractor and approved for payment by Elmer Foster. About 10% of the additional loan was to be withheld by the Bank until lien waivers were secured.

The money was deposited by the Bank in the Foster Construction Account and the monies were disbursed upon checks written by Elmer Foster. All of the money was expended, and the houses still were not completed.

Prior to commencing foreclosure proceedings, the Bank paid off several labor and materialmen's liens presumably to protect the priority and security of its mortgage, taking assignments from the lien holders.

In May 1967, the Bank commenced an action to collect on the promissory note representing the loans, to foreclose its real estate mortgage securing payment of the note, and to collect its money expended on purchasing the labor and materialmen's liens, including interest and attorney fees. Defendants in this action were the two Fosters and their respective wives for whom the two houses were being built, the contractor they hired to build the houses, and the two relatives, Mona Henke and Wilbur Damstrom who signed the promissory note and

agreement of March 1966, as accommodation co-signers. The first action is hereafter referred to as the main action.

All defendants in the main action, except the contractor who did not appear, interposed various defenses in their respective answers and defendant Mona Henke filed a counterclaim against the Bank with her answer, alleging fraud on the part of the Bank. The Bank, in its reply, generally denied Mona Henke's counterclaim.

Thereafter in February 1968, the Bank filed a second action against the Fosters and Mona Henke seeking recovery of $3,500 it allegedly paid to defendants by mistake in two separate transactions. All defendants answered interposing various defenses. This second action will hereafter be referred to as the subsidiary action.

Subsequently the main action and the subsidiary action were consolidated for trial. Depositions were taken from all parties, except the female Fosters and the contractor. After the depositions were taken, the Bank moved for summary judgment in both cases contending there was no genuine issue of material fact in either action and that it was entitled to judgment as a matter of law in both actions. The defendants in both the main action and the subsidiary action likewise filed motions for summary judgment in each action contending there was no genuine issue of material fact and that they were entitled to judgment as a matter of law.

The district court granted the Bank summary judgment in the main action against all defendants for all relief requested. Specifically judgment was granted (1) against the Fosters, Henke, and Damstrom for principal, interest, and attorney fees on the promissory note, and for foreclosure of the real estate mortgage, including abstract costs, fire insurance premiums and property taxes, (2) against the Fosters, respectively, for the labor and materialmen's liens which the Bank purchased on their respective houses, including interest and attorney fees, (3) establishing priority of obligation and payment

of the labor and materialmen's liens over the real estate mortgage. The mortgaged property was ultimately sold for $28,450 with the proceeds first being applied to satisfaction of the lien obligations, interest and attorney fees.

The district court also granted the Bank summary judgment in the subsidiary action against all defendants therein for all relief sought by the Bank.

In the main action, all defendants except the contractor appealed. In the subsidiary action, all defendants therein appealed.

After entry of judgment against them in the district court, defendants applied to that court for a stay of execution which was granted pending the furnishing of a supersedeas bond to be filed by August 6, 1968. The supersedeas bond was not filed, but on August 6 defendants applied to this Court for modification of the district court's order setting the amount of the supersedeas bond. This Court granted defendants a temporary stay of execution pending hearing. On August 19, the matter was heard and defendants' application was denied.

Thereafter on January 2, 1969, defendants filed a motion in this Court in both actions seeking an order authorizing defendants to pay into court or to plaintiff the sum of approximately $97,000 in satisfaction of both judgments without prejudice to the rights of defendants in this appeal or otherwise, in the alternative, that such sum be deposited with this Court as a supersedeas bond and that plaintiff be directed to release all executions and other actions taken by it. An order to show cause why the relief sought by defendants should not be granted was issued by this Court and the matter set for hearing.

On January 16, 1969 following the hearing, this Court denied the relief sought by defendants. In its order this Court, among other things, found that "Respondent bank has diligently endeavored to enforce their judgments by execution and has also commenced actions to set aside certain conveyances on the ground they were made to defraud credi-

tors * * *", that defendants "* * * have not promptly filed their briefs [on appeal] but have received extensions of time therefor", and that "This Court has had four calendars of hearings since these appeals were lodged in this Court, at any of which this appeal could have been heard had prompt action been taken to prepare the same for argument."

Thereafter on January 28, 1969, satisfaction of judgment was entered in both cases. Both cases were consolidated for appeal.

Numerous issues were raised by various appealing defendants directed at showing the existence of a genuine issue of material fact precluding summary judgment in either case. However, in our view, a single issue is dispositive of this appeal, viz: Does satisfaction of judgment by payment in full terminate a pending appeal under the circumstances of this case?

At the outset we note that the Bank on March 7, 1969 filed a motion to dismiss this appeal and a companion appeal in Gallatin Trust & Savings Bank v. Henke and Creditor's Recovery Service, 154 Mont. 178, 461 P.2d 448, decided by this Court on November 6, 1969. The basis of the Bank's motion was that all judgments in both appeals had been completely satisfied by payment in full, rendering all matters on appeal in those actions moot. On March 18, this Court denied this motion. Although the order of denial does not state on its face whether it is "with prejudice" or "without prejudice", it is clear that the motion was not decided on the merits and was therefore "without prejudice". The Bank has revived this motion to dismiss on its merits, all parties have treated this issue in their briefs, and the matter was covered extensively in oral argument. Acordingly, the merits of dismissal are before us for decision at this time and are not res judicata as contended by defendants.

As heretofore indicated, summary judgment was entered in both the main and subsidiary actions in July, 1968. No supersedeas bond has ever been posted to stay execution on

these judgments, although defendants clearly had the ability to do so as evidenced by their payment of the judgments in full. Although the Bank has been consistently attempting to satisfy its judgments by execution, defendants have not posted a supersedeas bond to stay these executions but instead have sought to remove themselves from this requirement. Arguably changes in position of the parties have occurred as evidenced by the pending litigation to set aside transfers allegedly in fraud of creditors. In any event, it is clear that property of Mona Henke has been transferred thereby reducing the assets otherwise available to satisfy the Bank's judgments.

What was recently said by this Court, speaking unanimously through Mr. Justice Castles in the companion case heretofore referred to, is equally applicable here:

"* * * Rule 7(a) clearly provides the only methods of staying judgments. In this case efforts were made, but no supersedeas bond was ever filed. This Court specifically denied relief in the way of a stay of execution of the judgments.

"Thereafter on January 28, 1969, the judgments were satisfied. When the judgment is paid it passes beyond review; its satisfaction ends the proceeding. The motions to dismiss the proceedings are granted." Gallatin Trust & Savings Bank v. Henke, 154 Mont. 178, 461 P.2d 448.

To the discussion and ruling in the foregoing case we can only add one comment. If a supersedeas bond is not required to stay proceedings and a party may satisfy a judgment in full by payment and still preserve his rights on appeal under the circumstances disclosed here, the requirement of a supersedeas bond and stay order are meaningless. Accordingly, the Bank's motion to dismiss the appeal is granted.

We have chosen not to rule on the various other issues raised by defendants as the right of plaintiff to dismissal of this appeal is clear. Assuming arguendo, that some of these issues may have technical or procedural merit, we are satisfied that the result here would be the same, there being no gen-

uine issue of fact material to the rights of the parties herein and plaintiff being entitled to judgment as a matter of law.

The judgment of the district court is affirmed.

MR. CHIEF JUSTICE JAMES T. HARRISON, MR. JUSTICES CASTLES and JOHN C. HARRISON and the HONORABLE THOMAS DIGNAN, District Judge, concur.