No. 86-363

IN THE SUPREME COURT OF THE STATE OF MONTANA

1988

---

EUGENE MOORE and JEANNINE  MOORE,

          Plaintiffs and Respondents,

  -vs-

BERNARD E. HARDY,

        Defendant and Appellant.

---

APPEAL FROM:  District Court of the Twelfth Judicial District,
In and for the County of Chouteau,
The Honorable Thomas McKittrick, Judge presiding.

COUNSEL OF RECORD:

    For Appellant:

        Donald A. Ranstrom, Chinook, Montana

    For Respondent:

        Jardine, Stephenson, Blewett & Weaver; K Dale Schwanke,
Great Falls, Montana

---

Submitted on Briefs: September 30, 1987

Decided:   January 19, 1988

Filed: JAN 1 9 1988

*Ethel M. Harrison*

Clerk

Mr. Justice R. C. McDonough delivered the Opinion of the Court.

Defendant Hardy appeals the Twelfth Judicial District Court's ruling in favor of plaintiffs. We affirm.

On April 1, 1976, appellant Bernard E. Hardy entered into an agreement with Jack Lang to purchase a farm, crops and a lease known as the McKee lease. Hardy also received the right to harvest the 1976 winterwheat crop planted by Lang. Hardy later obtained a renewal of the McKee lease until 1983.

In the spring of 1978 Hardy entered into two agreements with Paul Jackson where Hardy traded his equity in the Lang farm and some Florida property for other property in Florida. Under this exchange, Jackson was entitled to all of Hardy's rights, including the right to the McKee lease. The then growing crop and its expenses were Jackson's. Hardy was to continue to farm for Jackson.

In September 1978, Paul Jackson negotiated an exchange of the Lang farm with Dr. Eugene and Mrs. Jeannine Moore. The Moores understood that the McKee lease would be assigned if they bought the farm. They were to receive a growing crop when they bought the farm. Several agreements were executed to facilitate the exchange of properties. One of the agreements provided that the farm would be leased back by Jackson under a five-year lease. Jackson was to pay a yearly cash rental each February of $107,000. The lease provided that Hardy was to farm and operate the farm in a good and farmerlike manner and consistent with custom and practice prevailing in the area. All parties understood that Hardy was to continue farming the place. The lease was silent as to entitlement to crops in the event of default or termination of the lease.

2

Hardy and Jackson entered into an agreement and cash lease of which the Moores were not advised. Under this arrangement Hardy was to custom farm the Lang farm for Jackson through December 31, 1979. Jackson was to pay Hardy and Hardy had a lien on the 1979 crop that the Moores bought.

On February 1, 1979, Jackson paid the Lang farm payment to Moores. After harvesting the 1979 crop Hardy made the 1980 payment directly to the escrow. Hardy again made the 1981 payment directly to the escrow after harvesting the 1980 crop. In 1981 he harvested the crop but did not make the 1982 payment to anyone. Jackson did not make the Moore payment either and filed for bankruptcy on February 26, 1982. The Moore's gave notice in April 1982 to both Jackson and Hardy of default and that the lease was terminated.

The Moores then retained a person to farm the farm for them. In August 1982 Hardy attempted to harvest the 1982 winterwheat crop planted in Fall 1981. The Moores secured an order restraining Hardy from any further harvesting. The restraining order was set aside and Hardy was allowed to harvest the crop as long as he accounted for it. Hardy delivered the grain to an elevator for storage rather than store the grain on the farm. The crop proceeds were put into a trust held by his attorney.

The Moore's initiated suit claiming they were entitled to the crop proceeds, compensation for the value of the McKee lease, storage costs and punitive damages. A bench trial was held and the District Court found in favor of the Moores. After judgment was entered, Hardy voluntarily paid over to the Moores the share of the 1982 crop proceeds his attorney held.

Hardy is now appealing the District Court's judgment and raises these issues on appeal.

1) Whether the District Court erred in adopting plaintiff Moores' proposed findings and conclusions virtually verbatim?

2) (By Respondents) Whether issues #3 and #4 are moot?

3) Whether the District Court erred in failing to consider the doctrine of waygoing crops?

4) Whether the District Court improperly permitted introduction of evidence as to custom and usage to determine entitlement to crop proceeds?

5) Whether damages were properly assessed?

6) Whether punitive damages were proper?

7) Whether storage charges were properly assessed?

## ISSUE I

Appellant contends that the District Court's Findings of Fact and Conclusions of Law are an identical reproduction of the proposed findings and conclusions submitted by respondents. Appellants in particular point to findings number 13, 14 and 23 as erroneous and unsupported by evidence.

The standard by which findings of fact and conclusions of law are measured was enunciated by this Court in In Re Marriage of Jensen (Mont. 1981), 631 P.2d 700, 703, 38 St.Rep. 1109, 1113. "Our ultimate test for adequacy of findings of fact is whether they are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and whether they are supported by the evidence presented." The District Court's reliance on counsel's proposed findings of fact and conclusions of law does not automatically result in reversal. In In Re the Marriage of Alt (Mont. 1985), 708 P.2d 258, 260, 42 St.Rep. 1621, 1623, this Court held "where, as here, findings and conclusions are sufficiently comprehensive and pertinent to the issues to provide a basis for decision, and are supported by the evidence, they will not be overturned simply because the court relied upon proposed findings and conclusions submitted

4

by counsel." Quoting Kowis v. Kowis (1983), 202 Mont. 371, 379, 658 P.2d 1084, 1088. The record contains sufficient evidence upon which the District Court could base its findings. We uphold the District Court.

## ISSUE II

Respondent contends that appellant's issues 3 and 4 are moot. These issues concern the ownership of the 1982 crop. Issue 3 is whether the District Court erred in failing to consider the doctrine of waygoing crops? Issue 4 is whether the District Court improperly permitted introduction of evidence as to custom and usage to determine entitlement to crop proceeds.

After judgement Hardy voluntarily paid to the Moores the share of the 1982 crop proceeds and interest that his attorney was holding. This was a partial satisfaction of the judgment. Hardy did not place any restrictions on the use of the funds or stay execution of the lower court's judgment. The Moores used the proceeds to pay the balance of the Lang farm contract and pay income tax on the proceeds.

The unsuccessful party must seek to stay execution pending appeal. In Gallatin Trust and Savings Bank v. Henke (1969), 154 Mont. 170, 177, 461 P.2d 448, 451, this Court held that failure to preserve rights may result in mootness "the rule is well established that a supersedeas bond to preserve the rights of the unsuccessful party may be required and failure to post it makes the rights of the parties subject to execution, subsequent satisfaction of the judgment and possible mootness so far as appeals are concerned."

Voluntary payment of a money judgment does not automatically render a cause moot. Montana National Bank of Roundup v. State Department of Revenue (1975), 167 Mont. 429, 432-33, 539 P.2d 722, 724, sets the standard "A defeated party's compliance with the judgment renders his appeal moot only where the compliance makes the granting of effective

5

relief by the appellate court impossible." This is not the case here, partial payment of the money judgment does not render effective relief impossible. Issues 3 and 4 are not moot and we will address them.

ISSUE III

The District Court's conclusion of law that the 1982 crop reverted to the Moores and they became entitled to all proceeds upon termination of the Jackson-Moore lease rests on two pivotal facts. The Jackson-Hardy lease which was subject to the fixed term Jackson-Moore lease was for a fixed term and Hardy did not pay rent in 1982.

The District Court was correct in not applying the doctrine of wayward crops. Section 70-26-206, MCA, provides statutory guidance concerning entitlement to crops. The statute provides ". . . a tenant at will or for an indefinite term may cultivate and harvest the crops growing at the end of his tenancy." Hardy was neither a tenant at will or for an indefinite term.

Hardy's tenancy came to an end due to a default before the lease was up. In 1982 neither Hardy nor Jackson paid rent. Both the fact that the tenancy ended because of a default and the fact that Hardy did not pay rent prevent Hardy from claiming the 1982 crop. "Thus, where a tenant before the expiration of his term surrenders to the landlord, or through some default forfeits his lease and the landlord re-enters, the latter is entitled to the growing crops upon the land and no right or title therein remains in the tenant." 51 C.J.S. Landlord and Tenant § 349 at 886.

ISSUE IV

In determining who was entitled to crop proceeds the District Court considered evidence of custom and usage and on the basis of custom and usage held that the Moores were entitled to the crop proceeds. Appellant contends this was error because no contract existed between the Moores and

6

Hardy and thus evidence of custom and usage is inappropriate. Hardy, however, did not object to the introduction of this evidence at trial. By failing to object to admission of this evidence at trial, Hardy has waived his right to claim error on appeal. In re Schueren's Estate (1973), 162 Mont. 417, 512 P.2d 1283.

## ISSUE V

Hardy also claims that the District Court erred in assessing damages for the failure to assign the McKee lease to the Moores. He asserts that findings of fact 6 and 11 are not supported by evidence and that the court failed to apply § 27-1-314, MCA, the proper statutory measure of damages.

Rule 52(a), M.R.Civ.P., provides "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge of the credibility of the witnesses." Substantial evidence is needed to support the lower court's findings. Miller v. Watkins (1982), 200 Mont. 455, 461, 653 P.2d 126, 129. Testimony was presented, especially the testimony of Hardy himself, that supports the lower court's findings that Hardy had an obligation to assign the McKee lease to the Moores. There certainly was enough "'relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Bushnell v. Cook (Mont. 1986), 718 P.2d 665, 668, 43 St.Rep. 825, 828 (quoting State v. Plouffe (1982), 198 Mont. 379, 389, 646 P.2d 533, 539.)

Hardy's assertion that the District Court failed to apply § 27-1-314, MCA, the proper measure of damages is incorrect. Section 27-1-314, MCA, provides:

> Breach of agreement to convey real property. The detriment caused by the breach of an agreement to convey an estate in real property is considered to be the price paid and the expenses properly incurred in examining the title and preparing the necessary papers, with interest thereon. If the

7

breach was in bad faith and the agreed price was less than the value of the estate, the detriment is also considered to include the difference between the agreed price and the value of the estate at the time of the breach and the expenses properly incurred in preparing to enter upon the land.

The statute applies, a lease is an estate in real property and the amount of damages arrived at by the District Court is in accordance with § 27-1-314, MCA. The assignments between Hardy, Jackson and the Moores effected an assignment of the McKee leasehold to the Moores. Hardy had an obligation to transfer the lease to the Moores. The lease was never transferred to the Moores. Fred Schafer testified that the value of the McKee lease was $100 an acre. It was within the District Court's discretion to adopt the value of the lease as the amount of damages. The McKee lease was included in the assignment of the Lang farm and its value equals its portion of the total purchase price.

## ISSUE VI

Hardy argues that punitive damages were improperly assessed against him for the failure to assign the McKee lease. There is substantial evidence in the record to support the District Court's imposition of punitive damages. Section 27-1-221, MCA, governs the imposition of punitive damages. In this case the District Court found that "In failing to make the assignment over of the McKee Lease, Hardy breached the duty he had to do so and his actions in this regard were motivated purely by his desire to save the lease for himself after the Jackson bankruptcy, no matter what damage was done to the Moores by doing so. Hardy further attempted to avoid the duty to assign he had by interposing in bad faith and without justifiable cause, various defenses to the assignment of the lease." (Conclusion of Law No. 4) The court's conclusion which is based upon its findings of

8

fact, is supported by evidence in the record and is in accordance with the requirements of § 27-1-221, MCA.

ISSUE VII

Included in the damage award to the Moores was the sum of $4,645.69 for storage costs incurred at grain elevators because Hardy did not store the grain at the farm. Hardy claims that he was ordered by Judge Coder to take the crops to an elevator. Judge Coder's order does not include a requirement to store the grain in an elevator. The storage costs constitute an allowable item of compensatory damages. Section 27-1-202, MCA. The record reveals substantial evidence in support of the damage award. Testimony was presented that ample storage existed on the farm and there was testimony on the storage charges incurred by Hardy. Affirmed.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

9