NO.  95-329

IN THE SUPREME COURT OF THE STATE OF MONTANA

1996

JOHN P. TURNER,
          Plaintiff, Respondent and
                    Cross-Appellant,

     v.

MOUNTAIN ENGINEERING AND
CONSTRUCTION, INC., et al.,
          Defendants, Appellants and
                    Cross-Respondents.

KERIN AND ASSOCIATES,
          Plaintiff,

     v.

AMERITRUST FINANCIAL CORP., et al.,
          Defendants

FILED

JAN 11 1996

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:    District Court of the Eighteenth Judicial District,
                In and for the County of Gallatin,
                The Honorable Larry W. Moran, Judge presiding.

COUNSEL OF RECORD:

          For Appellant Johnston Excavating:

               Gregory O. Morgan, Attorney at Law, Bozeman, Montana

          For Respondent and Cross-Appellant John P. Turner:

               James A. McLean; Drysdale, McLean & Nellen, Bozeman,
               Montana
               George A. Guynes, Attorney at Law, Santa Fe,
               New Mexico

          For Plaintiff Kerin & Associates:

               Jon M. Hesse, Attorney at Law, Livingston, Montana

          For Defendant Figgins Sand & Gravel, Inc.:

               Richard A. Ramler, Attorney at Law, Belgrade,
               Montana

                         Submitted on Briefs: November 16, 1995
                                   Decided:  January 11, 1996

Filed:

_____
              Clerk

Justice W. William Leaphart delivered the Opinion of the Court.

This case arises out of a protracted dispute between the mortgagee (Turner) and construction lien creditors who performed work on the subject property. Turner executed on a foreign judgment, foreclosed on mortgages owned by the judgment debtor, and purchased the property at a sheriff's sale. The subject property is located in Gallatin County, Montana, and is commonly known as the "Royal Village" subdivision.

On March 14, 1995, the Eighteenth Judicial District Court, Gallatin County, entered its Memorandum and Order for Summary Judgment, granting Turner's Motion for Summary Judgment and finding his mortgages valid and superior to the construction liens. The original mortgages were executed in 1982 and 1983. In 1987, approximately eight years before the foreclosure sale, the construction liens were filed pursuant to § 71-3-535, MCA.

The District Court ordered Turner to prepare an appropriate decree and order for foreclosure of the property. In addition, the District Court awarded Turner his costs and attorney's fees against defendants Kerin and Associates, Figgins Sand and Gravel, Inc., and Johnston Excavating, Inc. (the lien creditors). On April 27, 1995, the District Court amended its order, deleting its award of costs and attorney's fees.

On May 5, 1995, the District Court entered its Judgment, Decree of Foreclosure, and Order of Sale. On May 25, 1995, in the interim between the judgment and the sheriff's sale, the lien

2

creditors filed their notice of appeal to this Court; however, they did not stay the proceedings or post a supersedeas bond. On June 22, 1995, a sheriff's sale was held to satisfy the four outstanding mortgages and Turner purchased the subject property.

The lien creditors appeal from the District Court's Memorandum and Order for Summary Judgment and Turner cross-appeals from the court's amended order which deleted his award of costs and attorney's fees.

We summarize the issues raised on the lien creditor's appeal and Turner's cross-appeal as follows:

1. Did the District Court err in finding that Turner's mortgages had priority over the construction liens?

2. Did the District Court err in finding that the statute of limitations had not run on the "Valley Bank" and "Greiner" mortgages?

3. Did the District Court err in granting priority to the "Greiner" mortgage even though the mortgage does not describe the debt it secures and does not adequately identify the mortgagee?

4. Did the District Court err in granting Turner's motion for summary judgment?

5. Did the District Court err in amending its Memorandum and Order for Summary Judgment when it deleted Turner's award of costs and attorney's fees?

In light of the fact that the subject property has been sold at a court-ordered foreclosure sale, Turner filed a motion to dismiss the appeal as moot. The lien creditors assert that because the judgment was satisfied by an involuntary payment or performance, their appeal from the judgment is not thereby rendered moot. We hold the issue of mootness to be determinative of issues one through four.

3

In so holding, we take this opportunity to clarify the question of mootness as it relates to foreclosure actions. We have long recognized that a question is moot when this Court cannot grant effective relief. Martin Dev. Co. v. Keeney Co. (1985), 216 Mont. 212, 220, 703 P.2d 143, 147-48; State ex rel. Hagerty v. Rafn (1956), 130 Mont. 554, 557-58, 304 P.2d 918, 919-20; State ex rel. Begeman v. Napton (1891), 10 Mont. 369, 369-70, 25 P. 1045, 1045-46. In Martin Dev. Co., this Court stated that:

> It is equally well recognized that payment of a money judgment by the judgment debtor does not, by itself, render the cause moot for purposes of appeal. A defeated party's compliance with the judgment renders his appeal moot only where the compliance makes the granting of effective relief by the appellate court impossible.

Martin Dev. Co., 703 P.2d at 147. Confusion, however, has arisen due to the Court's attempt to distinguish between voluntary and involuntary performance or compliance with a judgment. In a number of our prior decisions dealing with foreclosure actions and mootness, we have reasoned that, since foreclosure is involuntary rather than voluntary, it will not give rise to a waiver of the right to appeal from the judgment. See, e.g., Traders State Bank of Poplar v. Mann (1993), 258 Mont. 226, 234, 852 P.2d 604, 609; Moore v. Hardy (1988), 230 Mont. 158, 162, 748 P.2d 477, 480; LeClair v. Reiter (1988), 233 Mont. 332, 335, 760 P.2d 740, 742; First Nat'l Bank in Eureka v. Giles (1986), 225 Mont. 467, 468, 733 P.2d 357, 358 (citing First Nat'l Bank in Eureka v. Giles (Mont. 1986), 43 St.Rep. 1326, 1327-28). However, that voluntary versus involuntary analysis, in the context of mootness, was in error. Although the question of whether the appellant's compliance with a

4

judgment was voluntary or not has bearing on whether an appellant has waived his or her right of appeal, it has no bearing on the question of mootness.

The Rafn opinion is apparently the source of this voluntary versus involuntary distinction; however, in later cases, Rafn's characterization of the issue has been misstated. See, e.g., LeClair, 760 P.2d at 742. In Rafn, the district court prohibited the Montana Liquor Control Board from issuing beer and liquor licenses to persons other than those who had permits from the Blackfeet Tribe. Rafn, 304 P.2d at 919. The district court entered a writ compelling the Board to issue licenses to those parties who had tribal permits. Rafn, 304 P.2d at 919. The Board attempted to stay the issuance of the writ at the district court and at this Court. This Court, however, was not in session. Thus, the writs "were delivered to the [tribal permit holders] under protest and involuntarily" and tribal permit holders began to sell liquor and beer. Rafn, 304 P.2d at 919. Nonetheless, the Board members pursued their appeal and we held that:

> [B]ecause their compliance with the mandate of the lower court was coerced by the threat of punishment for contempt had they disobeyed, they have by obeying lost none of their rights to appeal and that they are entitled to a review here.

Rafn, 304 P.2d at 919. This Court went on to state that if the involuntary or coerced compliance with the district court's order were the only issue, this Court may have been able to hear the merits of the appeal. Rafn, 304 P.2d at 919. The Court went on to hold, however, that "we may not be called upon to review here, and

5

perhaps reverse, if our review is to no purpose and our reversal without effect." Rafn, 304 P.2d at 920. The Rafn Court recognized that the question was moot regardless of whether the Board, voluntarily or involuntarily, had obeyed the writs issued. Rafn, 304 P.2d at 920.

The Court analyzed what effect reversing the district court might have and recognized that since the licenses had already been issued, the parties could not be returned to their respective positions at the time of the applications. Thus, the Court held that the appeal was moot. Rafn, 304 P.2d at 920.

A party may not claim an exception to the mootness doctrine where the case has become moot through that party's own failure to seek a stay of the judgment. Gates v. Deukmejian (9th Cir. 1993), 987 F.2d 1392, 1408. In Gates, the Ninth Circuit held that by refusing to seek a stay of execution of the award, and by paying the amounts awarded, the defendants mooted any error in the interim award. Gates, 987 F.2d at 1408.

The question of mootness is different from the waiver of appeal rights, which is a concept that has worked itself into our prior mootness analysis. See, e.g., Traders State Bank, 852 P.2d at 609; LeClair, 760 P.2d at 742; Moore, 748 P.2d at 480; First Nat'l Bank in Eureka, 733 P.2d at 358; Montana Nat'l Bank of Roundup v. State Dep't of Revenue (1975), 167 Mont. 429, 432-33, 539 P.2d 722, 724. In each of these opinions, we have mixed the doctrine of waiver with our discussion of mootness. For example, in Traders State Bank, we stated that:

6

> As in *LeClair*, Mann Farms and John Mann did not voluntarily relinquish their real estate and personal property to the Bank; the Bank foreclosed. We conclude that the failure to post a supersedeas bond or otherwise stay the proceedings below does not render Mann Farms or John Mann's appeal moot.

*Traders State Bank*, 852 P.2d at 609. As this quote illustrates, the issue of mootness was confused with the involuntary nature of the foreclosure. This is in error. The issue of mootness is separate and distinct from the question of waiver of appeal rights. Complying with the judgment does not necessarily render the appeal moot. However, if compliance is voluntary, the party may be said to have waived any objection to the judgment. This is a different question than the issue of mootness.

In deciding whether a case is moot, we determine whether this Court can fashion effective relief. *Martin Dev. Co.*, 703 P.2d at 147-48; *Rafn*, 304 P.2d at 920. In a situation where a judgment has been satisfied by an involuntary payment or performance, the party cannot be deemed to have waived or acquiesced in the judgment such that the appeal would be precluded by prior conduct which is inconsistent with the appeal. However, that does not mean that the appeal is not moot. *Rafn*, 304 P.2d at 920-21. The fact that a party has not voluntarily waived its right to appeal does not necessarily mean that this Court can still provide effective relief.

In *Traders State Bank*, relying on a passage in *LeClair* which mischaracterized the holding in *Rafn*, we held that "where payment or performance of a judgment by an appellant is involuntary, the appellant does not acquiesce to the judgment and the right to

7

appeal is not affected." Traders State Bank, 852 P.2d at 609 (citing LeClair, 760 P.2d at 742). We went on to state that "[w]e expressly overruled Henke [Gallatin Trust and Sav. Bank v. Henke (1969), 154 Mont. 170, 461 P.2d 4481 and, in effect First Sec. Bank [First Sec. Bank of Kalispell v. Income Properties, Inc. (1984), 208 Mont. 121, 675 P.2d 9821 and held that the appeal was not moot because the defendant had not voluntarily surrendered the property." Traders State Bank, 852 P.2d at 609.

We now determine that this line of authority is unnecessarily confusing and in error. Moreover, these decisions all resulted in affirmances in favor of the foreclosing creditor and failed to analyze the question of what, if any, relief could be fashioned in the event of a reversal. See Rafn, 304 P.2d at 920-21. Accordingly, we overrule Traders State Bank, 852 P.2d at 609; LeClair, 760 P.2d at 742; Moore, 748 P.2d at 480; First Nat'l Bank in Eureka, 733 P.2d at 358; and Montana Nat'l Bank of Roundup, 539 P.2d at 724, to the extent that they hold that the voluntary versus involuntary payment or performance distinction is dispositive on the question of mootness.

In addition, we note that Rule 7(b), M.R.App.P., sets forth the procedure to stay a foreclosure sale. Rule 7(b), M.R.App.P., provides:

> Upon service of notice of appeal, if the appellant desires a stay of execution, the appellant must, unless the requirement is waived by the opposing party, present to the district court and secure its approval of a supersedeas bond which shall have two sureties or a corporate surety as may be authorized by law. . . When the judgment or order determines the disposition of property in controversy as in real actions, replevin, and

8

actions to foreclose mortgages, or when such property is in the custody of the sheriff or when the proceeds of such property or a bond for its value is in the custody or control of the court, the amount of the supersedeas bond shall be fixed at such sum only as will secure the amount recovered for the use and detention of the **property**, the costs of the action, costs on appeal, interest, and damages for delay. On application, the supreme court in the interest of justice may suspend, modify, restore, or grant any order made under this subdivision.

In the present case, the lien creditors failed to avail themselves of the protection of a stay of the proceedings under Rule 7(b), M.R.App.P. As Rule 7(b), M.R.App.P., makes clear, the lien holders should have sought a stay of the foreclosure sale.

After considering the issue of mootness in the foreclosure context, as well as Rule 7, M.R.App.P., we conclude that our holdings in First Sec. Bank of Kalispell v. Income Properties, Inc., Gallatin Trust and Sav. Bank v. Henke and State ex rel. Hagerty v. Rafn, correctly set forth the doctrine of mootness without interjecting the concept of waiver and the distinction between voluntary and involuntary compliance.

Generally speaking, loss of property through foreclosure is involuntary and will not give rise to a waiver of the right to appeal from the judgment. For example, if the property has been foreclosed upon but not yet sold, it may still be possible for this Court to fashion a remedy. However, the underlying question we must confront in determining whether an appeal is moot is not whether the sale was involuntary, but, rather, whether or not this Court is in a position to grant effective relief.

In Martin Dev. Co., this Court determined that the appeal was

9

not moot because, although a money judgment had been satisfied, no property had changed hands, and no third party interests were involved. The Court held that despite voluntary payment of the judgment, effective relief could still be granted. Martin Dev. Co., 703 P.2d at 147-48. However, our holding in Martin Dev. Co. contemplated a situation like the one raised in the instant case. In Martin Dev. Co., we noted that certain factors were not present; namely, that no property had changed hands and no third party interests were involved. Both of those elements are present in the case *sub judice*.

Here, the subject property has been sold at a sheriff's sale and third party interests, albeit Turner's, are involved. Further, there is no surplus from the sheriff's sale for the lien creditors to attach. The appellants' status as lien creditors who did not post a supersedeas bond or stay the proceedings at the District Court pending appeal, along with the fact that no surplus was recovered at the foreclosure sale, make it impossible for this Court to grant effective relief. The parties cannot be returned to the status quo. See Martin Dev. Co., 703 P.2d at 148; see also 9 James W. Moore et al., Moore's Federal Practice ¶ 208.03 (2d ed. 1994) (stating that there is a particular danger of dismissal for mootness and, thus, a special need for seeking a stay when the district court refuses to enjoin or, as in this case, orders a sale of the property).

As this Court recognized in Martin Dev. Co., when there is no effective relief this Court can fashion, the appeal is moot.

10

Martin Dev. co., 703 P.2d at 147-48. Appellants allowed foreclosure sale to proceed, did not stay the proceedings, and did not post a supersedeas bond. As has been recognized, there is a danger of dismissal for mootness and, thus, a special need for seeking a stay when the sale of property is ordered and is not enjoined. A party who is confronted with a judgment ordering a foreclosure sale and who allows the foreclosure sale to proceed runs the risk that his appeal will thereby be rendered moot. Moore et al., supra at ¶ 208.03.

In summary, the voluntary versus involuntary distinction still has meaning in ascertaining whether an appeal is barred due to waiver. Thus, if an appellant has voluntarily complied with, or performed a judgment, that voluntary compliance may result in a waiver of that party's right to appeal and, thus, it would be unnecessary for this Court to address the question of mootness. In a like manner, when compliance is involuntary, as in most foreclosure actions, the appeal is not barred or waived, but may, nevertheless, be moot to the extent that this Court cannot grant any effective relief. That peril has come to pass in the instant case. At this time, this Court cannot grant effective relief.

We therefore dismiss issues one through four of the appeal as moot and proceed to a discussion of issue five, which was raised by Turner on cross-appeal.

5. Did the District Court err in amending its Memorandum and Order for Summary Judgment when it deleted Turner's award of costs and attorney's fees?

In 1987, Kerin filed suit to foreclose its construction lien.

11

Figgins Sand & Gravel and Johnston Excavating were named as defendants in the suit, and Figgins counterclaimed and cross-claimed seeking a determination of the priority of the liens and foreclosure of its lien. In that action, the mortgagees who were Turner's predecessors in interest were also named as defendants, however, the action was stayed because of the bankruptcy petition filed by Ameritrust, a mortgagee. Turner obtained an order from the United States Bankruptcy Court for the Eastern District of California abandoning the trustee's interest in the Royal Village subdivision.

After obtaining this order, Turner filed suit to foreclose on the Royal Village subdivision on December 30, 1992. In February of 1993, Turner's suit was consolidated with the lien creditors' suit. In an attempt to invalidate Turner's mortgage and to obtain priority and validity of their liens, the lien creditors filed counterclaims and cross-claims. After a protracted dispute between the lien creditors and Turner, both Figgins and Turner filed motions for summary judgment. Turner's brief in support of his motion for summary judgment included a request for attorney's fees and referenced § 71-3-124, MCA.

In its March 14, 1995, Memorandum and Order for Summary Judgment, the District Court awarded Turner his costs and attorney's fees pursuant to §§ 71-1-233 and 71-3-124, MCA. Lien creditors moved the District Court to reconsider its award of costs and attorney's fees and, on April 27, 1995, the District Court entered its Order Amending Summary Judgment striking the award. On

12

cross-appeal, Turner argues that the lien creditors waived their right to object to the award of costs and attorney's fees and, further, that the District Court was without the power to amend the original award. Lien creditors rely on Rules 52(b) and 60(b), M.R.Civ.P., as authorizing the District Court to amend its order. Even assuming that the court had authority to amend the award, an amendment as to § 7X-3-124, MCA, was not appropriate. Section ?I-3-124, MCA, provides:

> In an action to foreclose any of the liens provided for by parts 3, 4, 5, 6, 8, or 10 of this chapter, the court must allow as costs the money paid for filing and recording the lien and a reasonable attorney's fee in the district and supreme courts, and such costs and attorneys' fees must be allowed to each claimant whose lien is established, and such reasonable *attorneys' fees must be allowed to* the *defendant against whose property a lien is claimed, if such lien be not established.*
> [Emphasis added. ]

Section 71-3-124, MCA, required an award of attorney's fees to the party successfully defending the lien foreclosure. Carkeek v. Ayer (1980), 188 Mont. 345, 348, 613 P.2d 1013, 1015. Thus, the District Court was correct in its original order which granted costs and attorney's fees to Turner pursuant to § 71-3-124, MCA

The proceedings evolved into a contest to determine the priorities and validity of various construction liens and mortgages as well as an action by Turner to foreclose on the mortgages. Lien creditors and Turner were the principal parties to the litigation and the priority of the construction liens and their foreclosure was central to the litigation. Here, Turner was not only attempting to determine the priority of his mortgages and foreclose on them, he was also defending against the construction lien

13

holders' foreclosure suits. Thus, the award was required by § 71-3-124, MCA, and was proper.

We reverse and remand for a determination of Turner's costs and attorney's fees pursuant to § 71-3-124, MCA.

_W. William Leaphart_
Justice

We concur.

_Justices_